IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| GLEN GIVLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-6381-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

Brenda S. Moseley
320 Central Avenue, Suite 422
Coos Bay, Oregon 97420

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Glen Givler brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

///

///

**THE ALJ'S DECISION**

The ALJ found that Givler had severe impairments of a status post left calcaneus[1] fracture and reflex sympathetic dystrophy [2] ("RSD"). After reviewing the medical reports, the ALJ concluded that Givler could perform sedentary work within the limitations given by the examining doctors. The ALJ did not give full credence to Givler's testimony concerning his need for breaks and his trouble dealing with the public and coworkers. Based on the testimony of a vocational expert, the ALJ concluded that Givler could work as a food and beverage order clerk, patcher/assembly-type worker utilizing heating elements, and document preparer. Thus, the ALJ found that Givler was not disabled under the Act.

**FACTS**

Glen Givler, who was 43 years old at the time of his hearing, has a high school education and work experience as a warehouse worker, mechanic, RV park maintenance worker, gas station attendant, diesel mechanic, and stocker/truck unloader. Givler contends that he has been disabled since August 9, 2000, due to a fall from a ladder that caused a fracture of his left calcaneus and RSD. An orthopedist, Dr. Sampson, surgically repaired Givler's fracture about two weeks after the fall. Since the surgery, Givler has walked only with the assistance of crutches, or occasionally a cane.

Dr. Kirkpatrick, a neurosurgeon, examined Givler on February 19, 2001. He found that the foot was demonstrably cold without purple discoloration, that there was possible but no

---

[1] The large bone of the heel. Merriam Webster's Medical Desk Dictionary 106 (1996).

[2] A painful disorder that usually follows a localized injury, marked by burning pain, swelling, and motor and sensory disturbances. Merriam Webster's Medical Desk Dictionary 691 (1996).

definite atrophy of the calf or shin muscles, and that Givler jumped when he touched the foot. Dr. Kirkpatrick could offer no surgical cure but referred Givler to a vascular surgeon to consider a left lumbar sympathectomy to increase the blood flow. Givler had sympathectomies performed on March 19, 2001, and April 23, 2001.

Dr. Versteeg, an orthopedist, examined Givler on September 26, 2001, about the complaints of continued pain. Dr. Versteeg did not think that any surgical intervention would help and that Givler would "probably have to live with this foot, even though it is painful. He can use a cane." Tr. 180. Dr. Versteeg did not recommend renewing the narcotics prescription and limited Givler to modified activities without prolonged walking, running, climbing, or jumping; standing or walking for 1-2 hours a day; and sitting for a total of 8 hours with a break every 2 hours.

On February 5, 2002, Givler was examined by a neurologist, Dr. Bernstein, who concluded that Givler had RSD with some pain behavior but doubted that there was much that he could do for Givler. He recommended a conservative stance instead of additional surgery.

Givler's physicians prescribed antidepressants and pain killers, including neurontin, ultram, hydrocodone, naproxen, and morphine.

On February 19, 2003, nurse practitioner Guthridge, who treated Givler, completed a work capacity questionnaire. She stated that Givler constantly felt pain severe enough to affect his ability to concentrate or maintain focus on work tasks, that his pain medication had an impact on his ability to maintain alertness or focus on work tasks and would impact the pace at which he could work, and that he could not even perform sedentary work for ten hours a week. Guthridge stated that Givler would on average miss more than four days of work a month.

Givler lives alone with his son, who was four at the time of the hearing, in a 32-foot travel trailer. The child lives with his mother from Sunday morning until Tuesday evening. Givler's parents, aunt and uncle, who all live next door, and his girlfriend, assist him with the household chores. Givler's mother shopped with him daily immediately after his injury and helped him carry the laundry to the machines, take the garbage out, and vacuum. By the time of the hearing, Givler's father did all of his shopping.

Givler feels the pain from his foot rising up his leg to either his knee or his hip. Pain medication deadens the pain to a level allowing Givler to do day-to-day things, such as cooking or washing dishes, as long as he can kneel his leg on a chair for support and not stand on the foot. Even with the support, Givler can only remain standing for 20 minutes and then has to rest for 30 minutes. Walking on the crutches increases the pain level. Givler also cannot sit for extended periods of time and must stand after 10 minutes. He gets muscle spasms which are controlled by medication. Cold and rainy weather also increase the pain and can keep Givler on the couch all day. The pain medication slows Givler down quite a bit, makes it difficult to concentrate, and makes him drowsy. Givler complains that he is very irritable and snaps at people two or three times a week. According to Givler, the antidepressants helped his depression a lot.

## DISCUSSION

I. <u>Rejection of Givler's Symptom Testimony</u>

Givler contends that the ALJ improperly discredited his subjective symptom testimony. Givler contends that his activities over time had discrepancies because he was taking different pain medications at a higher dosage at the time of the hearing as compared to two months after his initial injury.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ compared Givler's testimony at the hearing on February 3, 2003 with Givler's father's statements about Givler's activities in a report dated October 22, 2000, about two months after the surgery. In comparison, Givler testified to far greater pain and inability to do other activities in 2003 than what is stated on the 2000 form. The ALJ also compared Givler's

Page 8 - OPINION AND ORDER

statements on a form dated October 22, 2000, in which Givler said he had no side effects from medication and that it made the pain better, with Givler's testimony at the hearing that the current medication, morphine, made it difficult for him to concentrate. Givler had taken other prescription narcotics but his pharmacy report does not show a prescription for morphine until December 29, 2002. Tr. 127-28, 211.

I acknowledge that Givler had not been seen by a physician for a year prior to the hearing, although his prescriptions were being refilled. But I do not think the comparison of Givler's activities shortly after his surgery to his activities two and one half years later is a reasonable way to gauge his credibility, particularly when he has been diagnosed with a disease that gets progressively worse. I also agree with Givler's argument that his particular medications had changed, leading to different side effects. His medical records are filled with remarks from the physicians that Givler reported that various medications, including some of the narcotic medications, were ineffective. This led the physicians to try different drugs in an effort to get him adequate pain relief. Consequently, I conclude that the ALJ did not give clear and convincing reasons for rejecting Givler's subjective pain testimony.

II.     Rejection of the Opinion of the Nurse Practitioner

Givler contends that the Commissioner did not give adequate reasons for not giving sufficient weight to the opinion of his treating nurse practitioner. Givler's attorney did not file the nurse practitioner's report with the ALJ, even though the record was held open for a week to allow her to do so. The report was sent to the Appeals Council for consideration, which denied Givler's request for review.

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits. The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. Id.

The nurse practitioner's report differs from the opinions of the treating physicians and, if fully credited, could lead to a determination of disability. Although I realize that a nurse practitioner is not an acceptable medical source under 20 C.F.R. § 416.913, her opinion is evidence that must be treated as any other lay opinion. I conclude that the ALJ must have an opportunity to consider the nurse practitioner's report.

III. Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

I conclude that there are issues to be resolved prior to a determination of whether Givler is disabled as defined by the Act. First, I ask the Commissioner to reconsider Givler's credibility. I am particularly concerned by the difference between Givler's testimony and the limited restrictions put on his work activities by his physicians. Updated physical examinations may be necessary but I will leave that up to the discretion of the Commissioner. Second, I ask the Commissioner to give appropriate consideration to the report of Givler's nurse practitioner. Again, an update may be necessary. Consequently, I find that the action must be remanded to address these issues.

///

///

///

**CONCLUSION**

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this ___28th___ day of September, 2005.

                                          ___/s/ Garr M. King___
                                          Garr M. King
                                          United States District Judge